MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. W. J. MALONE.

No. 1903. Decided January 27, 1909.

**1.—Railway—Lookout for Persons on Track—Charge.**

To impose on the servants of a railway operating its trains the duty to keep a lookout for persons walking on the track to avoid injuring them, the facts must be such as would cause an ordinarily prudent person, under similar conditions, to expect to find people at that place at that time. The use of the track as a path for pedestrians during night time by a few persons, without evidence that any officer or agent of the company had knowledge of it, was not sufficient to create such duty in operating trains at night, though there was proof of more extensive use for such purpose by day. See instruction on this point held improperly refused. (Pp. 271–274.)

**2.—Trespasser—Walking on Track.**

One using a railway track in walking from one station to another at night and injured while crossing a long bridge by being struck by a train without being seen by those operating it, was a trespasser, guilty of contributory negligence as matter of law, and was not entitled to recover for his injuries. (Pp. 273, 274.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Hunt County.

Malone sued the railway company and recovered judgment. Defendant appealed, and on ·affirmance obtained writ of error.

*Coke, Miller & Coke* and *John T. Craddock,* for plaintiff in error.—

The fact that appellant's road bed, at the place of injury, may have been commonly used by pedestrians as a foot path in the day time, or even the early part of the night, would not necessarily make it the duty of appellant to use ordinary care to discover any-one so using its tracks very late at night. Bradley v. San Antonio & A. P. Ry. Co., 80 Texas, 84; Texas & P. Ry. Co. v. Short, 58 S. W., 57; Frye v. St. Louis, I. M. & S. Ry. Co., 98 S. W., 566; Hoback v. Louisville, H. & St. L. Ry. Co., 99 S. W., 241; Chesapeake & O. Ry. Co. v. Farrow, 55 S. E., 569; Chesapeake & O. Ry. Co. v. Nipp, 100 S. W., 246; Burde v. Chicago, B. & Q. Ry. Co., 100 S. W., 509.

The appellant owed no duty to appellee to use any degree of care to discover him on its track in the night time unless its track at the place where he was injured had been commonly used in the night time by pedestrians as a foot path, with the knowledge of appellant. Houston & T. C. Ry. Co. v. Richards, 59 Texas, 373; Galveston, H. & S. A. Ry. Co. v. Ryon, 70 Texas, 59; Houston & T. C. Ry. Co. v. Smith, 77 Texas, 181; International & G. N. Ry. Co. v. Neff, 87 Texas, 303; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Texas & P. Ry. Co. v. Huber, 95 S. W., 568; Stooksbury v. Swan, 85 Texas, 563; Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 320; McDonald v. International & G. N. Ry. Co., 86 Texas, 1; Bradley v. San Antonio & A. P. Ry. Co., 80 Texas, 84; Texas & P. Ry. Co. v. Short, 58 S. W., 57; Frye v. St. Louis, I. M. & S. Ry. Co., 98 S. W., 566; Hoback v. Louisville, H. & St. L. Ry. Co., 99 S. W., 241; Chesapeake & O. Ry. Co. v. Farrow, 106 Va., 137; Chesapeake & O. Ry. Co. v. Nipp, 100 S. W., 246; Burde v. Chicago, B. & Q. Ry. Co., 123 Mo., 629.

Appellee was negligent in going on the track in the condition he was in and in not observing the approaching train. Galveston, H. & S. A. Ry. Co. v. Ryon, 80 Texas, 59; St. Louis S. W. Ry. Co. v. Shiflet, 94 Texas, 131; Eppstein v. Missouri P. Ry. Co., 94 S. W., 967.

*B. Q. Evans* and *Looney & Clark,* for defendant in error.—The evidence showed that defendant's road where plaintiff was walking at the time he was injured had been for a great number of years commonly, habitually, and uninterruptedly used by the public as a foot path, and the court was justified in charging the jury as complained of. Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314; Lee v. International & G. N. Ry. Co., 89 Texas, 583; St. Louis & T. Ry. Co. v. Crosnoe, 72 Texas, 79; Gulf, C. & S. F. Ry. Co. v. Matthews, 99 Texas, 160.

Where the public for a number of years has commonly, habitually, and uninterruptedly used the track of a railway as a footpath, with the acquiescence of the company, although without its express license, a license to do so will be presumed; and persons using such track are not trespassers, but licensees, and the company must exercise reasonable care to avoid injuring any such person. 2 Thompson Neg., sec. 1725; Thomas v. Chicago, M. & St. P. Ry. Co., 103 Iowa, 649, 39 L. R. A., 399.

In order to conserve human life, without regard to the question whether the plaintiff at the time was or was not a trespasser or licensee the defendant was bound to exercise ordinary care and watchfulness to discover and warn him, because he was at a point on its track where people might be expected to be found. St. Louis & S. W. Ry. Co. v. Shifflet, 56 S. W., 697.

By the implied assent of the defendant, the public was accustomed to and did use its track as a footpath at the place where plaintiff was struck, therefore it was the duty of its employees in charge of its train to exercise ordinary care in keeping a lookout for persons on the track and to give reasonable notice of the approach of the train. Louisville & N. Ry. Co. v. Schuster (Ky.), 7 S. W., 873; 6 Rap. and Mack, Dig., 272; Shelby v. Cincinnati, N. O. & T. P. Ry. Co., 85 Ky., 224.

It was the duty of the defendant to exercise a high degree of care in operating its trains on any part of its road, and especially over any section thereof, habitually used by the public as a passway. St. Louis & T. Ry. Co. v. Crosnoe, 72 Texas, 79; Galveston C. R. R. Co. v. Hewitt, 67 Texas, 479; Hughes v. Galveston, H. & S. A. Ry. Co., 67 Texas, 598.

MR. JUSTICE BROWN delivered the opinion of the court.

On the 11th day of August, 1905, W. J. Malone took passage at Dallas on the Missouri, Kansas & Texas Railway for Royse, a station on that road. He desired to go to a station called Burrow, a few miles from Royse, but the conductor refused to stop the train at that place and he got off at Royse. It was about 10 o'clock when he reached Royse, and with a grip in his hand and a coat on his arm he started to walk on the railroad track to Burrow. He says that he walked slowly and rested frequently. At some time in the night near to 12 o'clock he reached a bridge over Sabine Creek. The bridge was about two hundred feet long and was at some points as high as twelve feet above the bed of the creek. When Malone reached the bridge he stopped and listened for a train and looked both ways to see if a train was coming and then started across the bridge. When he had gotten near to the farther end of it he heard a noise and, looking back, saw a train coming upon the other end of the bridge. He started to run with a view to escape from the train, but just as he passed off the bridge the locomotive struck him, knocking him off the track, broke his leg in two places, and injured his arm badly, inflicting upon him serious injuries. Malone lay there until next morning when the section foreman came along and picked him up and carried him to some place for attention. The train was running at a speed of about thirty miles per hour. The fireman and engineer both testified that they did not see Malone upon the bridge nor after he was injured.

Counsel for plaintiff in error admit that the evidence is sufficient to impose upon the railroad company the duty to keep a lookout for persons at that place in the day time, therefore, we will not make any statement of the evidence with reference to the use of the track during the day. The evidence as to the use of the railroad track

at night by persons walking upon it is very meagre. Comparatively few persons were shown to have walked upon the track at night. There is no evidence in the record to show that any officer or agent of the company knew of the use of the track at night. The railroad company answered by general denial, by plea of contributory negligence, and specially pleaded that the appellee was either drunk or partially drunk, and lying asleep on the track when he was struck by the train; that he was a trespasser upon the track, lying down in a drunken condition asleep at the time. At a trial before a jury the plaintiff recovered $4,000 for which the trial court entered judgment and the Court of Civil Appeals affirmed that judgment.

The judge of the trial court gave to the jury this charge:

"When with the knowledge and consent or acquiescence or permission of a railway company any portion of its road bed, bridges or trestles have been for any considerable length of time commonly, usually, and customarily used by pedestrians as a footpath, it is the duty of such company by its agents and servants engaged in the operation of its engines and trains over such portion of its road bed, bridges and trestles thus used to exercise ordinary prudence to keep a lookout for persons on its track, where people may be expected to be to avoid injuring them.

"If, therefore, you believe from the evidence in this case, that the road bed and bridge of the defendant company between the stations of Royse and Burrow where the plaintiff was injured, if you find he was injured, was, on the 11th day of August, 1905, and for a number of years immediately prior thereto had been commonly, usually, and customarily used by pedestrians as a footpath, and you believe that such use by the public of its road bed and bridge was with the knowledge and consent or acquiescence or permission of the defendant company and its train employes, and you believe that on the 11th day of August, 1905, the plaintiff attempted and did use the defendant's road bed and bridge as a footpath in traveling from Royse to Burrow and you believe that at the bridge which crosses Sabine Creek he was run upon and struck by one of defendant's engines and was injured, and you believe that the servants of the defendant operating the train in question failed to exercise ordinary prudence to discover the presence of any person who might be using the portion of the road bed and bridge in question at the time and place and for the purpose plaintiff was using it, and if you believe that by the exercise of such degree of care by defendant's servants operating its engine they would have discovered the plaintiff in time to have avoided the injury to him, and you find that the acts of defendant's servants operating its engine was negligence as herein defined and that the same was the proximate cause of plaintiff's injury, if any, then and in that event you should find for the plaintiff, unless you find for the defendant under the instructions hereafter given."

The court refused to give at the request of the defendant the following charges:

"The defendant had the right to the unobstructed use of its track for the passage of its trains, and unless you believe from the evidence that there had, prior to the time of the accident, been such

common, notorious, and habitual use of the track as a footway by the public in the night time that the defendant would in the exercise of ordinary care have had notice thereof, then there was no obligation upon the defendant as to the plaintiff to keep a lookout for him to discover his peril, if he was in a perilous position. If, therefore, you believe from the evidence that the use of the track as a footway by the public in the night time was not common, notorious, and habitual, you will find for the defendant."

"Unless you believe from the evidence that the public had notoriously, commonly, and habitually used the track as a footway in the night time for such a length of time that the defendant ought reasonably to have known and anticipated such use in the night time, then you are charged that the defendant's servants in charge of the engine would have been justified in assuming that the track was unobstructed by footmen."

The effect of the charges given by the court was to tell the jury that, in case the road bed and bridge had been commonly used with the knowledge and consent of the railroad company in the day time as a footpath by people who traveled that way, the plaintiff who used the track at night could recover of the railroad company if the employes failed to use ordinary care to discover him. The railroad company asked a special charge to correct the error, which was refused. The contention of the railroad company is that the use of the track by the public in the day constituted no notice to it of the use of it for the same purpose at night. The reason for requiring a railroad company to use the care specified to avoid injuring persons who were walking upon its track at a place where it is commonly used is that such use notifies it that people are liable to be there, therefore the operatives of trains must use ordinary care to discover them and also use such care to avoid injuring them. The rule does not apply to the same place when used at night if the company had notice only of the fact that the public used the track in the day time. The facts must be such as would cause an ordinarily prudent person under similar conditions to expect to find people at that place at that time. Bradley v. San Antonio & A. P. R. R. Co., 80 Texas, 84; Frye v. St. Louis, I. M. & S. Ry. Co., 98 S. W., 566.

There is some evidence in the record of occasional use of the track and bridge at night by persons who lived in that neighborhood, but we are of opinion that if the use of the road in the day had not been shown to be more frequent and notorious than that which the evidence showed at night there would have been no duty resting upon the railroad company to take the prescribed care in passing that place during the day. There is not only a want of evidence sufficient to establish the use of the road at night to such extent as to impose the duty of ordinary care upon the railroad company, but there is an absolute want of evidence to show that any officer or agent of that company had knowledge of the slight use of the bridge at night that was proved. Malone's evidence shows that he was a trespasser, therefore guilty of contributory negligence as a matter of

law, there being no fact to bring his case within any exception to that rule.   Texas & P. Ry. Co. v. Watkins, 88 Texas, 24.

It is manifest that Malone has no right of recovery, therefore the judgments of the District Court and Court of Civil Appeals are reversed and judgment entered that defendant in error take nothing and that plaintiff in error go hence without day and recover all costs.

*Reversed and rendered.*